UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM ROBERT SHAW,

        Plaintiff,

    v.                                           Case No. 20-C-365

CITY OF MILWAUKEE, SHERRIF DAVID CLARK,
LT. SEAL, LT. HIENZ, LT. JONES, LT. TURNER,
CO CARROL, and JOHN DOES,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff William Robert Shaw, who is incarcerated, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging the defendants violated his constitutional rights. This order resolves Shaw's motion for leave without prepaying the filing fee and screens his complaint.

### A. Motion for Leave to Proceed without Prepaying the Filing Fee

Shaw has requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Shaw filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2). The court determined that pursuant to 28 U.S.C. § 1915(b)(4), Shaw was not required to pay an initial partial filing fee. Accordingly, Shaw's motion for leave to proceed without prepaying the filing fee will be granted, and he will have to pay the full filing fee over time as explained in this order.

### B. Screening the Complaint

#### 1. Federal Screening Standard

Under the PLRA, a court must dismiss a complaint if a plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To proceed under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

#### 2. Plaintiff's Allegations

Shaw alleges he was subjected to six strip searches during a two-year period while he was incarcerated as a pretrial detainee at Milwaukee County Jail. The first search happened on July 17, 2017; the second on July 21, 2018; the third on December 8, 2018; the fourth on January 1, 2019; the fifth on January 5, 2019; and the sixth on May 9, 2019. He states that the six searches "were all conducted and transpired in the same if not similarly exact way; taking place in the same

location/area of the Milwaukee County Jail on the fourth floor inside unit 4D outside recreational cages/rooms." Dkt. No. 1 at ¶ 44.

On each of the six occasions, he states that an unknown "Supervisor/Lieutenant" and "three to four [unknown] correctional officers" took him to solitary confinement for "simple behavioral issues." *Id.* at ¶¶ 13, 24, 28, 32, 36, and 40. Shaw emphasizes that he was not being placed in confinement for possessing contraband. For each search, Shaw alleges that these John Doe correctional officers took him to the outdoor recreational cage and had him change from his orange jumpsuit to the red jumpsuit that inmates in solitary confinement were required to wear. Also, each time he was required to get completely naked, exposing his genitals to the John Doe defendants while the John Doe defendants inspected every article of clothing. Shaw notes that if one of the John Doe officers was female, two male officers would shield him from her view with a sheet.

Shaw alleges that on one occasion, he asked why he had to get completely naked, and a John Doe correctional officer responded that it was "policy and procedure." *Id.* at ¶ 46. Shaw also states he spoke with other pretrial detainees within the jail, and they confirmed that when they were placed into solitary confinement, they were also subject to the same type of search as he was.

Shaw alleges that Sherriff David Clarke, who oversaw the jail during the relevant time period, knew or should have known about the policy of requiring detainees to strip completely naked before entering solitary confinement and that he approved of the policy, or at least condoned it. He further alleges that Correctional Officer Carrol, and Lieutenant Supervisors Seal, Heinz, Jones, Turner, as well as other unknown Lieutenant Supervisors knew or should have known that this policy was unreasonable, and they approved of it or at least condoned it. Additionally, he

named the City of Milwaukee as a defendant he alleges because the individual defendants were employed by the city and the policy was a city policy.

Shaw further alleges he filed several grievances about the strip search policy, but "most of them were either 'lost or purposely thrown away' by Milwaukee County Jail personnel." *Id.* at ¶ 7. He also states he has carbon copies of grievances he recently filed but notes he has not received responses to any of his grievances yet because jail staff have an unlimited amount of time to respond to grievances.

Shaw states he suffered emotional distress, humiliation, and trauma as a result of having to strip down naked. He requests compensatory damages, punitive damages, and attorney fees. He does not request any injunctive relief.

### 3. Analysis

Shaw claims that the defendants violated his Fourth Amendment rights when they subjected him to a strip search pursuant to policy each time he was placed into solitary confinement. Under the Fourth Amendment, courts apply a reasonableness standard to the search policy in question. *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). In other words, courts must determine "whether a policy is reasonably related to legitimate security interests." *Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012). Courts should also defer to correctional officers' judgment regarding whether a policy is reasonable unless there is "'substantial evidence in the record to indicate that the officials have exaggerated their response.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 548 (1979)). *Florence* addressed whether a policy of routine visual strip-searches of pretrial detainees violated the Fourth Amendment, holding that such searches, where prison officials did not invasively touch the detainee during the

course of the search, were reasonable and justified by the institution's need to deter the possession of contraband and ensure the safety of staff and other inmates. *Id.* at 328, 339-40.

The policy of searches Shaw alleges here is similar to the policy of searches at issue in *Florence.* Shaw states that other pretrial detainees underwent similar experiences, and that in his own experience, the defendants conducted the searches nearly the same way every time. Shaw further alleges that when a female officer was present, the defendants took care to shield his person from her view. Shaw does not allege that at any time any defendant invasively touched him during the search. The searches, as alleged, appear to be the very picture of routine visual strip-searches, conducted pursuant to a policy designed to serve the legitimate interest in protecting the security of staff and inmates at Milwaukee County Jail.

Shaw also fails to allege any facts suggesting that the defendants' justification for conducting the searches was exaggerated, which is needed to overcome the deference the court gives to jail officials under these circumstances. At best, Shaw alleges that they were searching him for contraband even though he did not get sent to solitary confinement for possessing contraband, just "behavioral issues." While that may be true, without a search, the jail staff have no way of knowing if he nevertheless had contraband on his person. Keeping prison staff and other inmates safe from potential contraband is a legitimate security interest, and under *Florence*, there is no requirement that suspicion of contraband must be individualized to justify the search. *See King*, 781 F.3d at 900 (explaining that *Florence* held that routine strip-searches for contraband conducted "without individualized suspicion" were reasonable under the Fourth Amendment). Shaw fails to allege any facts suggesting the six strip searches conducted pursuant to policy were unreasonable. As such, he fails to state a claim upon which relief can be granted, and the court will dismiss his case.

5

**C. Conclusion**

**THEREFORE, IT IS ORDERED** that Shaw's motion for leave to proceed without prepaying the filing fee (Dkt. No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that the Clerk of Court document that Shaw has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of Shaw shall collect from his institution trust account the full $350.00 filing fee by collecting monthly payments from Shaw's prison trust account in an amount equal to 20% of the preceding month's income credited to Shaw's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Shaw is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the Milwaukee County Sheriff and to Dennis Brand, 821 W. State Street, Room 244, Milwaukee, WI 53233.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend

this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Green Bay, Wisconsin this 6th day of May, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court